1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ELIZABETH FORAN,                    No. 1:20-cv-00267-DAD-BAM

12               Plaintiff,

13        v.                              ORDER GRANTING IN PART
                                          DEFENDANTS' MOTION TO DISMISS
14    ULTHERA, INC., et al.,
                                          (Doc. No. 23)
15               Defendants.

16

17        This matter is before the court on the motion to dismiss filed by defendants Ulthera, Inc.,

18   Merz Inc., and Merz North America (collectively, "defendants") on June 5, 2020.  (Doc. No. 23.)

19   Pursuant to Local Rule 230(g) and General Order No. 617, defendants' motion was taken under

20   submission without a hearing for decision on the papers.  (Doc. No. 26.)[1]  For the reasons

21   ───────────────────

22   [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
     overwhelming caseload has been well publicized and the long-standing lack of judicial resources
23   in this district long-ago reached crisis proportion.  That situation has now been partially addressed
     by the U.S. Senate's confirmation of a new district judge for this court on December 17, 2021.
24   Nonetheless, for over twenty-two months the undersigned was left presiding over approximately
     1,300 civil cases and criminal matters involving 735 defendants.  Unfortunately, that situation
25   sometimes results in the court not being able to issue orders in submitted civil matters within an
     acceptable period of time.  This has been frustrating to the court, which fully realizes how
26   incredibly frustrating it is to the parties and their counsel. involving 732 defendants at last count.
     Unfortunately, that situation sometimes results in the court not being able to issue orders in
27   submitted civil matters within an acceptable period of time.  This situation is frustrating to the
     court, which fully realizes how incredibly frustrating it is to the parties and their counsel.
28

                                          1

1   explained below, the court will grant in part defendants' motion to dismiss.

2                                    **BACKGROUND**

3          Plaintiff filed the operative first amended complaint ("FAC") in this action on May 22,

4   2020.  (Doc. No. 21.)  Therein, plaintiff alleges as follows.

5          Defendants manufacture and sell a medical device, the "Ulthera System" or "Ultherapy,"

6   that uses focused ultrasound to heat tissue to cause mechanical cellular disruption and that is

7   marketed as a non-invasive alternative to face lifts.  (*Id.* at ¶¶ 8, 10.)  To market certain devices in

8   the United States, one can obtain clearance from the United States Food and Drug Administration

9   ("FDA") through a premarket notification process as set forth in section 510(k) of the Federal

10  Food, Drug, and Cosmetic Act.  (*See id.* at ¶ 9.)  The Ulthera System is cleared by the FDA via

11  the 510(k) premarket notification process for the following uses:  to lift the skin on the neck, lift

12  skin under the chin, lift skin on the eyebrow, and to reduce lines and wrinkles on the chest.  (*Id.* at

13  ¶ 9.)  On their website and in the marketing, training, and instructional materials distributed to

14  clinicians, defendants market the Ulthera System for use on the entire face, despite the FDA

15  denying clearance for use of the Ulthera system on the full face and neck.  (*Id.* at ¶¶ 22–27, 30–

16  34.)

17         Defendants represented to the FDA that no permanent injuries to facial nerves have been

18  reported as associated with the use of Ultherapy, that Ultherapy uses safe ultrasound energy, and

19  that Ultherapy has been established as safe and effective in clinical studies and half a million

20  treatments worldwide.  (*Id.* at ¶¶ 35–37.)  According to plaintiff, defendants had actual, direct

21  knowledge of permanent nerve injuries associated with the use of the Ulthera System but failed to

22  report such injuries to the FDA, including in the following instances:  (1) on April 10, 2012, a

23  member of defendant Merz Inc.'s advisory board reported a permanent and serious nerve injury to

24  defendant Ulthera, Inc.'s vice president of medical and clinical affairs; (2) on April 17, 2014,

25  defendants and the FDA received a report that a neurologist had confirmed that a patient suffered

26  damage to the trigeminal nerves after receiving Ultherapy treatment; (3) on December 18, 2017, a

27  plaintiff filed the complaint in *Zhu v. Ulthera, Inc.*, No. 2:17-cv-09057 (C.D. Cal. 2017) alleging

28  that she had sustained serious and permanent facial injuries as a result of Ultherapy; and (4) on

                                            2

March 5, 2018, a dozen plaintiffs filed a consolidated amended complaint in *Foresee v. Ulthera, Inc.*, No. 16-cv-15444 (Ariz. Super. Ct. 2018) alleging serious facial nerve damage, scarring, discoloration, and elasticity injuries which were not disclosed as potential risks of Ultherapy.  (*Id.* at ¶¶ 38–39, 41, 52, 55–56.)  Thus, plaintiff alleges that defendants had actual knowledge of "reports of permanent facial scars, discoloration, damage to the skin including tone, elasticity and appearance, and related damages and risks associated with the Ulthera System prior to plaintiff's Ultherapy procedure" in 2019.  (*Id.* at ¶ 40.)

On April 24, 2019, plaintiff received Ultherapy treatment at a beauty salon called Body Del Sol in Fresno, California.  (*Id.* at ¶ 64.)  Prior to receiving treatment, Body Del Sol personnel informed plaintiff that Ultherapy was a "non invasive, rejuvenating skin treatment" and was "safe," "FDA-approved," had only "temporary side effects," had "no long-term risks," and could be used on the "entire face," as advertised in an email that Body Del Sol sent to plaintiff promoting the use of Ultherapy on the full face.  (*Id.* at ¶¶ 66–67.)  According to plaintiff, the statements by Body Del Sol personnel were based on information provided by defendants— information that was inaccurate due to defendants' failure to report adverse events to the FDA. (*Id.* at ¶¶ 66, 69–70.)  Body Del Sol personnel had also provided plaintiff with an "Ultherapy Consent Form" that stated the Ulthera System delivered a low amount of focused ultrasound energy and that bruising, welts, burns, scarring, temporary nerve inflammation, temporary local muscle weakness, temporary numbness, reduced sensitivity to touch, and pigmentation changes may occur but would resolve in days to weeks.  (*Id.* at ¶¶ 73–81.)  According to plaintiff, the information in the consent form was based on materials provided by defendants.  (*Id.* at ¶ 71.)

Plaintiff agreed to receive Ultherapy treatment to the "full face," which included treatment near the eyes.  (*Id.* at ¶ 68.)  Plaintiff alleges that defendants acknowledged that Ultherapy cannot be safely used near the eyes, but failed to inform the FDA of the risks of Ultherapy treatment near the eyes and marketed the Ulthera System to clinicians and patients for use near the eyes.  (*Id.* at ¶¶ 44–46.)  Defendants also provided detailed instructions, charts, and marketing materials for performing Ultherapy directly next to the eyes.  (*Id.* at ¶¶ 48–50.)

/////

Plaintiff alleges the Ultherapy treatment caused her to suffer severe and permanent facial, eye, and nerve damage, including tingling in the right arm and leg, paresthesia, bilateral uncontrolled hand shaking, facial numbness, facial pain, fat atrophy, increased wrinkles, vision loss, blurred vision, eye hemorrhage, ringing of the ears, light sensitivity, oral dryness and associated mouth and teeth pain, increased skin elasticity, and other painful, disfiguring, debilitating injuries.  (*Id.* at ¶ 86.)  Plaintiff sought medical treatment for her injuries in May 2019.  (*Id.* at ¶ 85.)

Based on these allegations, plaintiff asserts the following claims against defendants in her FAC:  (1) strict products liability based on a manufacturing defect, design defect, and failure to warn; (2) negligence based on defendants' failure to warn; (3) breach of express warranty; (4) negligence *per se* based on defendants' failure to warn the FDA by reporting adverse events; (5) fraudulent misrepresentation and concealment; and (6) unfair business practices in violation of California's Unfair Competition Law, California Business and Professional Code §§ 17200, *et seq.*, ("UCL").  (Doc. No. 21.)

On June 5, 2020, defendants filed the pending motion to dismiss plaintiff's FAC, contending that plaintiff's claims are preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act ("FDCA"), that plaintiff otherwise fails to state a claim as to each of her causes of action, and that plaintiff lacks standing to bring the UCL claim. (Doc. No. 23.)  Defendants also argues that this court lacks personal jurisdiction over defendant Merz Inc.  (*Id.* at 32–33.)  On June 22, 2020, plaintiff filed an opposition to defendants' motion to dismiss, in which she concedes that this court lacks personal jurisdiction over defendant Merz Inc., that her claim for strict products liability based on a manufacturing defect or a design defect should be dismissed, and that her claim for breach of warranty should also be dismissed.  (Doc. No. 28 at 31.)[2]  On June 30, 2020, defendants filed a reply to plaintiff's opposition.  (Doc. Nos. 28, 33.)

---

[2]  In light of plaintiff's concessions, the court will grant defendants' motion to dismiss defendant Merz, Inc. for lack of personal jurisdiction, plaintiff's strict products liability claim based on a manufacturing defect or a design defect, and plaintiff's claim for breach of warranty.

1                                   **LEGAL STANDARD**

2         The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

3 sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

4 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5 sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

6 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the

7 claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a)

8 does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

9 a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

10 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the

11 plaintiff pleads factual content that allows the court to draw the reasonable inference that the

12 defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a

13 complaint states a claim on which relief may be granted, the court accepts as true the allegations

14 in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon*

15 *v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.

16 1989). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or

17 that the defendants have violated the . . . laws in ways that have not been alleged." *Associated*

18 *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

19         A complaint alleging fraud must satisfy heightened pleading requirements. Fed. R. Civ.

20 P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

21 constituting fraud or mistake."). "Fraud can be averred by specifically alleging fraud, or by

22 alleging facts that necessarily constitute fraud (even if the word fraud is not used)." *Kearns v.*

23 *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted). "When an

24 entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations

25 fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the

26 complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (citing

27 *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

28 /////

Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of its particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (internal quotations omitted) (citing *Bly-Magee*, 236 F.3d at 1019). To satisfy the particularity standard of Rule 9(b), the plaintiff "must set forth more than the neutral facts necessary to identify the transaction" at issue. *Id.* (citation and internal quotations omitted); *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotations omitted).

## DISCUSSION

The court will first address whether plaintiff's claims are preempted and then turn to the question of whether plaintiff has sufficiently stated cognizable claims for relief.

**A.      Federal Preemption by the MDA**

1.      Legal Standard

Under the Supremacy Clause, Congress has the power to pre-empt state law. U.S. Const. art. VI, cl. 2. "Pre-emption may be either express or implied." *Shaw v. Delta Airlines*, 463 U.S. 85, 97 (1983) (citations omitted); *see also Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007). Express preemption occurs if a federal statute explicitly indicates that federal law is to supersede state law. *Easterwood*, 507 U.S. at 664 (observing that "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent"); *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2008). Implied preemption, in contrast, occurs if congressional intent to preempt is "implicitly contained in [the] structure and purpose" of a federal law. *Montalvo*, 508 F.3d at 470 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1997)).

There are two types of implied preemption—field preemption and conflict preemption. *California v. ARC Am. Corp.*, 490 U.S. 93, 100–01 (1989); *Gingery v. City of Glendale*, 831 F.3d 1222, 1228 (9th Cir. 2016); *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013) (*en banc*). Field preemption "is applied when Congress intends federal law to 'occupy the field,'"

6

with the result being that "all state law in that area is preempted." *ARC Am. Corp.*, 490 U.S. at 100; *Bank of Am. v. City and Cnty. of San Francisco*, 309 F.3d 551, 560 (9th Cir. 2002) ("Field preemption is implied when the scheme of federal regulation in a particular field is so pervasive as to leave no room for the States to supplement it."). Conflict preemption exists when "the state law makes it either impossible to follow the federal law or provides a significant obstacle to adhering to the federal law." *Freightliner Corp v. Myrick*, 514 U.S. 280, 287 (1995); *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (explaining that a state statute is preempted where it conflicts with or frustrates federal law); *Gingery*, 831 F.3d at 1229 ("Under the doctrine of conflict preemption, a state action must yield to federal executive authority where 'there is evidence of clear conflict between the policies adopted by the two.'"); *Puente Arizona v. Arpaio*, 821 F.3d 1098, (9th Cir. 2016) ("A law is field preempted where (1) the 'regulatory framework is so pervasive' that there is no room for state regulation, or (2) where the 'federal interest [is] so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"). Regardless of the type, however, preemption only applies if it is "the clear and manifest purpose of Congress."[3] *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

The statutory language of the MDA confirms Congress's intent that state law claims be preempted in certain circumstances. The MDA established a regime of regulation over medical devices, codified in 21 C.F.R. §§ 808, *et seq.*, and introduced an express preemption provision under 21 U.S.C. § 360k(a) and an implied preemption provision under 21 U.S.C. § 337(a).

The express preemption provision states in relevant part as follows:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

/////

---

[3] Indeed, "[t]here is a presumption against federal preemption of state laws that operate in traditional state domains." *Stengel*, 704 F.3d at 1227.

> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).  Thus, an *applicable* federal requirement must exist, meaning that the FDA has established regulations specific to the particular medical device at issue.  21 C.F.R. § 808.1(d); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496 (1996) (noting that state law will be preempted "only to the extent that the FDA has promulgated a federal 'requirement'"); *Perez v. Nidek Co., Ltd*., 711 F.3d 1109, 1117 (9th Cir. 2013).  Additionally, the state law must be different from or additional to that federal requirement, and must relate to safety or effectiveness.  *Lohr*, 518 U.S. at 496; *Perez*, 711 F.3d at 1117.  Such laws are not limited to state statutes—state common law claims may be preempted "to the extent that their recognition would impose requirements different from, or additional to, FDA requirements applicable to the device." *Papike v. Tambrands Inc*, 107 F.3d 737, 741 (9th Cir. 1997) (citing *Lohr*, 518 U.S. at 512) (Breyer, J., concurring in part).  However, state law requirements that are "equal to, or substantially identical to, requirements imposed by or under the [MDA]" are not preempted."  21 C.F.R. § 808.1(d)(2).  State law requirements of "general applicability" are also not expressly preempted unless they have "the effect of establishing substantive requirements for a specific device." *Lohr*, 518 U.S. at 500; *see also Do Sung Hum v. Humana, Inc.*, 620 F.3d 1134, 1149 n.25 (9th Cir. 2010).  The MDA thus has an exception to express preemption for claims that "parallel" rather than add to federal requirements. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008); *see also Stengel*, 704 F.3d at 1228.  To state a parallel claim, a plaintiff must allege the violation of a specific federal requirement applicable to the device, and the violation of an identical state law duty. *See Wolicki-Gables v. Arrow Int'l, Inc*., 634 F.3d 1296, 1300–01 (11th Cir. 2011); *Frere v. Medtronic, Inc.*, No. 5:15-cv-02338-TJH-DTB, 2016 WL 1533524, at *7 (C.D. Cal. Apr. 6, 2016).  The MDA also does not prohibit states from providing remedies for state law claims premised on violations of FDA regulations. *See Frere*, 2016 WL 1533524, at *5.

Even if a claim is not expressly preempted, it may be preempted by implication.  The MDA impliedly preempts claims that are based solely on violations of federal requirements, and not on state law requirements that could exist independently of any federal rules. *Buckman Co. v.*

8

*Plaintiff's Legal Comm.*, 531 U.S. 341, 352–53 (2001); *see also Vieira v. Mentor Worldwide, LLC*, 845 F. App'x 503, 505 (9th Cir. 2021)[4], *cert. denied sub nom. Billetts v. Mentor Worldwide LLC*, No. 21-26, 2021 WL 5284827 (U.S. Nov. 15, 2021); *cf. Lohr*, 518 U.S. at 500–02 (finding that there was no preemption of plaintiff's state law claims because they arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA requirements); *Stengel*, 704 F.3d at 1230–33 (finding that a state law negligence claim escaped implied preemption because the state law cause of action was "independent of the FDA's pre-market approval process," and could exist separately from any federal requirement to report adverse events to the FDA.  The basis for such implied preemption is that the MDA explicitly prohibits lawsuits by private litigants to enforce the FDCA's provisions, instead requiring that all such actions "shall be by and in the name of the United States." 21 U.S.C. § 337(a).

Put together, the two preemption provisions leave only a "narrow gap" through which a plaintiff's state law claim must fit in order to escape preemption by the FDCA:  "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)."  *Perez*, 711 F.3d at 1120 (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)); *Vieira*, 845 F. App'x at 505.  In other words, plaintiffs can avoid preemption if their state-law claims rest on a state-law duty that "parallels" a federal-law duty and is independent of any exclusively federal requirement.  *Riegel*, 552 U.S. at 330; *Stengel*, 704 F.3d at 1228, 1233. "To properly plead parallel claims that survive preemption, a plaintiff must allege facts (1) showing an alleged violation of FDA regulations or requirements related to [the device], and (2) establishing a causal nexus between the alleged injury and the violation."  *Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1178 (C.D. Cal. 2013) (quoting *Erickson v. Bos. Sci. Corp.*, 846 F. Supp. 2d 1085, 1092 (C.D. Cal. 2011)).

---

[4]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

2.       Whether Plaintiff's Claims are Preempted by the MDA

In their pending motion to dismiss, defendants contend that each of plaintiff's claims are preempted by the MDA because the Ulthera System is subject to device-specific requirements by the FDA, and that plaintiff, by bringing state law claims against them, seeks to impose new standards for safety and effectiveness that go beyond those federal requirements.  (Doc. No. 23-1 at 14–17.)

In opposing the pending motion to dismiss, plaintiff argues that her claims are not preempted under the MDA because they are based on California state laws that do not impose requirements additional to or different from federal requirements.  (Doc. No. 28 at 14–17, 22–23.) Plaintiff also contends that her UCL claim is not preempted because 21 C.F.R. § 808.1(d)(1) provides that state requirements of general applicability are not preempted where their purpose relates to unfair trade practices and are not limited to devices.  (*Id.* at 29.)

In their reply, defendants elaborate upon their preemption argument, arguing that plaintiff's failure to warn claims are impliedly preempted because they are based entirely on alleged violations of the MDA and plaintiff "identified no California state-law duty that parallels FDA reporting requirements."  (Doc. No. 33 at 4–7.)

The court addresses the parties' preemption arguments as to each of plaintiff's claims below.

a.       *Failure to Warn Claims (First, Second, Fourth Causes of Action)*

With her first, second, and fourth causes of action, plaintiff alleges that defendant is liable under California law based on both strict liability and negligence theories for a failure to warn the FDA of adverse events as required by the MDA, which imposes a continuing duty on medical device manufacturers to report certain adverse events associated with those devices to the FDA. (Doc. No. 21 at 13–17)  (citing 21 C.F.R. §§ 803.50(a)(1), 806.10(a)(1); *Stengel*, 704 F.3d at 1233.  Plaintiff's FAC is unclear as to whether plaintiff is also asserting that defendants failed to directly warn clinicians and patients of adverse events related to the use of the Ulthera System. (Doc. No. 21 at ¶¶ 96, 97, 102, 103, 115.)  Out of an abundance of caution, the court will address each of these potential claims below.

10

1    With respect to her claim based upon a strict liability theory, plaintiff alleges that

2    defendant violated the MDA, specifically 21 C.F.R. §§ 803.50(a)(1), *et seq.* and 21 U.S.C.

3    §§ 301, 360(i), by failing to report adverse events to the FDA.  (Doc. No. 21 at ¶ 97.)  She asserts

4    that had defendants properly reported the alleged adverse events, plaintiff and her clinicians

5    would have learned of the risks associated with the use of the Ulthera System and that, with this

6    information, her clinicians would have received instructions related to the "proper use" of the

7    device.  (*Id.*)  Plaintiff also alleges that defendants "failed to provide adequate and timely

8    warnings to both patients and clinicians regarding the Ulthera System and its known risks and

9    defects."  (*Id.* at ¶ 96.)  Plaintiff alleges that she suffered injuries as a direct and proximate result

10   of defendants' failures in this regard.  (*Id.* at ¶ 97.)

11    Plaintiff's negligence theories are nearly identical to her strict liability theory of recovery.

12   She alleges that defendants owed a continuing duty pursuant to 21 C.F.R. § 820.198(a)(3) to

13   discover and warn the FDA of complaints about the Ulthera System's performance after sale,

14   "including adverse health consequences of which it became aware and that are or may be

15   attributable to the product," and submit medical device reports to the FDA pursuant to 21 U.S.C.

16   § 360(i).   (*Id.* at ¶¶ 102, 115.)  Plaintiff also alleges that defendants "negligently failed to provide

17   adequate and timely instructions and training to clinicians."  (*Id.* at ¶ 103.)  Plaintiff contends that

18   defendants' violation of 21 C.F.R. § 820.198(a)(3) and 21 U.S.C. § 360(i) constituted a breach of

19   defendants' duty owed to her, and that this breach caused her to suffer injuries and damages.  (*Id.*

20   at ¶¶ 107, 116, 118.)

21    As to both the strict liability and a negligence theory of recovery, "[i]n states that

22   recognize failure to report [adverse events] claims, such as California, a manufacturer's failure to

23   report adverse events to the FDA can form the basis of a parallel [failure to warn] claim that

24   survives preemption."  *Vieira*, 845 F. App'x at 505 (citing *Stengel*, 704 F.3d at 1233; *Coleman v.*

25   *Medtronic, Inc.*, 223 Cal. App. 4th 413, 428–29 (2014)).  A failure to warn claim brought under

26   state law will not be expressly preempted by the FDA so long as it "demand[s] the same conduct

27   of manufacturers that federal law [does]."  *Frere*,  2016 WL 1533524, at *5; *see generally*

28   *Stengel*, 704 F.3d at 1233 (holding that a state law negligence claim based on failure to warn was

1   not expressly preempted because the "state-law duty parallel[ed the] federal-law duty" to report

2   events to the FDA).  Such a claim also escapes implied preemption because, under traditional

3   California tort law, device manufacturers have a duty to warn of dangers.  *Hawkins v. Medtronic,*

4   *Inc.*, 62 F. Supp. 3d 1144, 1165 (E.D. Cal. 2014) (citing *Stengel*, 704 F.3d at 1233–34 and cases

5   applying California law).

6          Plaintiff attempts to clarify in her brief in opposition to the pending motion that her failure

7   to warn claims are "based on the manufacturer's failure to comply with the continual reporting

8   requirements of the MDA" and not on an alleged failure to warn plaintiff or her clinicians directly

9   of adverse events.  (*Id.* at 16, 22.)  However, this clarification contradicts the plain language of

10  the allegations in the FAC, which assert not only that defendants failed to report to the FDA but

11  also "failed to provide adequate and timely warnings to both patients and clinicians regarding the

12  Ulthera System and its known risks and defects."  (Doc. No. 21 at ¶¶ 96, 97, 102, 103, 115.)  To

13  the extent that plaintiff's FAC seeks to impose a duty to warn onto defendants that is broader and

14  in addition to what the MDA requires by alleging that defendants failed to directly warn patients

15  and clinicians, plaintiff's failure to warn claims are expressly preempted.  *See Stengel*, 704 F.3d at

16  1234 (Watford, J., concurring) ("[A]ny attempt to predicate the [plaintiff's] claim on an alleged

17  state law duty to warn doctors directly would have been expressly preempted."); *Hawkins v.*

18  *Medtronic, Inc.*, No. 1:13-cv-00499-AWI-SKO, 2014 WL 346622, at *14 (E.D. Cal. Jan. 30,

19  2014) (holding that "[d]efendants cannot be made to go beyond [federal] warning requirements"

20  to warn patients and physicians of risks directly).

21         However, to the extent that plaintiff's failure to warn claims are premised on defendants'

22  alleged failure to report adverse events associated with the Ulthera System to the FDA, in

23  accordance with requirements under the MDA, plaintiff's claims are not expressly or impliedly

24  preempted.  Such claims are state law claims that are predicated on alleged violations of federal

25  requirements, not different or additional state requirements.  See *Martin v. Medtronic, Inc.*, No.

26  1:15-cv-00994-DAD-MJS, 2017 WL 4574160, at *5 (E.D. Cal. Oct. 13, 2017) (holding that a

27  failure to warn claim based on a failure to report adverse events to the FDA pursuant to the

28  MDA's requirements escaped express preemption); *Frere*, 2016 WL 9455137, at *4–5 (same).

1   Such claims are also based on California tort law that predates and exists independent of the

2   FDCA.  *See Martin*, 2017 WL 4574160, at *5 (holding that a similar failure-to-warn claim

3   escaped implied preemption); *Frere*, 2016 WL 9455137, at *6 (same).

4          Accordingly, plaintiff's failure to warn claims based on an alleged failure to warn patients

5   and clinicians directly are preempted.  However, plaintiff's failure to warn claims based on an

6   alleged failure to report adverse events to the FDA are not preempted under the MDA.[5]

7                  b.      *Fraud by Misrepresentation and Omission Claim (Fifth Cause of Action)*
                          *and UCL Claim (Sixth Cause of Action)*
8

9          Plaintiff's fifth cause of action alleges that defendants engaged in fraud through

10   intentional or negligent misrepresentation and concealment.  (Doc. No. 21 at ¶¶ 120–22.)

11   Plaintiff's sixth cause of action alleges that defendants violated the UCL by engaging in the

12   fraudulent conduct alleged in the fifth cause of action.  (Doc. Nos. 21 at ¶ 136; 23-1 at 11.)  The

13   FAC is unclear as to whether plaintiff is asserting that defendants made misrepresentations to and

14   concealed from the FDA, the clinicians who administer treatment using the Ulthera System, or

15   the patients who receive Ultherapy.  (Doc. No. 21 at ¶¶ 120–21.)  In an abundance of caution, the

16   court will address each of these potential claims below.

17          FDA regulations establish specific requirements for disclosure of dangers relating to

18   medical devices.  21 C.F.R. § 803.50(a).  State law claims that depend on safety requirements "in

19   addition to" those federal mandates are expressly preempted under federal law.  *See Perez*, 711

20   F.3d at 1118–19 (finding that the FDCA expressly preempted plaintiff's fraud-by-omission

21   claims, since the plaintiff sought to enforce state law requirements that would have required

22   defendants to give additional medical device disclosures than those required under federal law.)

23          State law fraud claims are also impliedly preempted when those claims exist solely by

24   virtue of the FDCA disclosure requirements.  *See Buckman*, 531 U.S. at 352–53 (stating that

---

25   [5]  Defendants cite numerous court decisions from other jurisdictions where failure-to-warn claims
26   have been rejected because no state-law duty to warn exists, and argues that California similarly
     imposes no such duty to warn.  (Doc. Nos. 23-1 at 15–16; 33 at 4–8.)  However, California courts
27   have repeatedly explained such a duty does exist under California law and the Ninth Circuit has,
     similarly, recently so held.  *See Vieira*, 845 F. App'x at 505; *Mize v. Mentor Worldwide LLC*, 51
28   Cal. App. 5th 850, 863 (2020); *Coleman*, 223 Cal. App. 4th at 428–29.

1    "were plaintiffs to maintain their fraud-on-the-[FDA] claims here, they would not be relying on

2    [state law that] has predated the federal enactments in question . . . [instead] the existence of these

3    federal enactments is a critical element in their case"); *see also McClellan v. I-Flow Corp.*, 776

4    F.3d 1035, 1040 (9th Cir. 2015) (citing *Buckman*, 531 U.S. at 347–48) ("Policing fraud against

5    federal agencies is hardly 'a field [that] the States have traditionally occupied,' such as to warrant

6    a presumption against preemption"). The FDA is responsible for investigating potential

7    violations of the FDCA, and the Act provides the agency with a range of enforcement

8    mechanisms, such as injunction proceedings, civil and criminal penalties, and seizure. 21 U.S.C.

9    §§ 332–34, 372. Although citizens may petition the FDA to take administrative action, 21 C.F.R.

10   §§ 10.25(a) and 10.30, private enforcement of the statute is barred: "all such proceedings for the

11   enforcement, or to restrain violations, of [the Act] shall be by and in the name of the United

12   States." 21 U.S.C. § 337(a).

13        In her FAC, plaintiff alleges that defendants "knowingly misrepresented material facts to

14   the FDA regarding the safety and efficacy of the Ulthera System" while "kn[owing] these

15   representations to be false" and did so "with the intent to induce clinicians and their patients

16   (including [plaintiff]) to rely upon them so as to increase sales and profits." (*Id.* at ¶¶ 120–21.)

17   Plaintiff also alleges that defendants completed the 501(k) process with the FDA for the Ulthera

18   System, which cleared to be marketed for specific safe and effective uses. (*Id.* at ¶ 9.) To the

19   extent plaintiff challenges marketing statements approved by the FDA during the 501(k) process,

20   her fraud claim is expressly preempted, because it seeks to impose duties beyond those required

21   under federal law. *Id.* To the extent plaintiff challenges misrepresentations made by defendants

22   to the FDA, the claim is subject to implied preemption, since it would be based entirely on

23   claimed violations of federal law. *See McClellan*, 776 F.3d at 1039 (emphasizing that claims

24   challenging "fraudulent representations *during* the [pre-market approval] process, *to the FDA*,"

25   were impliedly preempted, but that parallel claims challenging misrepresentations made "outside

26   the context of the regulatory process" were not subject to preemption); *Frere*, 2016 WL 1533524,

27   at *9 ("To the extent Plaintiff's fraud claim is based on Defendants' alleged misrepresentations,

28   her claim is impliedly preempted.").

14

However, plaintiff also alleges that defendants "made these misrepresentations in marketing materials, including patient brochures, videos, online advertisements, and online at www.ultherapy.com, that directly reached [plaintiff] and the clinicians who performed [plaintiff's] Ultherapy procedures prior to [plaintiff's] Ultherapy procedures." (Doc. No. 21 at ¶ 121.) In determining whether plaintiff's claims based on allegations involving defendants' communications direct to clinicians and patients are preempted by the MDA, this court finds the Ninth Circuit's decision in *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015) to be instructive here. In *McClellan*, the Ninth Circuit held that a plaintiff's claim that the defendant "negligently failed to warn that its pain pump should not be used in intra-articular spaces such as the glenohumeral joint" was not preempted because it "did not arise solely by virtue of the MDA," the allegations occurred "outside the context of the regulatory process" and they did not "usurp the exclusive federal enforcement power over the MDA." 776 F.3d at 1037, 1041. Similarly, here, plaintiff's claim that defendants misrepresented the safety of using the Ulthera System on one's entire face in their marketing and training materials do not arise solely by virtue of the MDA; rather, the alleged marketing occurred outside of the context of the 510(k) regulatory process, and does not usurp federal enforcement power over the MDA. As such, the court concludes here that plaintiff's fraudulent misrepresentation claim as to defendants' marketing materials distributed to clinicians and patients is not preempted by the MDA.

The court will next address plaintiff's claim of fraud by omission. In asserting that claim, plaintiff contends that defendants fraudulently concealed and suppressed material facts relating to the danger posed by the Ulthera System from the FDA, clinicians, and plaintiff. (Doc. No. 21 at ¶ 120.) As with plaintiff's fraudulent misrepresentation claim, to the extent plaintiff challenges alleged omissions of material facts in defendants' disclosures to the FDA, the claim is based entirely on alleged violations of the MDA and is therefore subject to implied preemption. *See McClellan*, 776 F.3d at 1039; *Buckman*, 531 U.S. at 353 (holding that the fraud-on-the-FDA claims that "exist solely by virtue of the FDCA disclosure requirements" were preempted). Additionally, by alleging that defendants are liable to clinicians and plaintiff for their alleged failure to disclose material facts, plaintiff seeks to impose duties beyond the mandates imposed on

15

1    defendants by the MDA, and this aspect of plaintiff's fraudulent concealment claim is therefore

2    subject to express preemption.  *See Perez*, 711 F.3d at 1119 (holding that the FDCA expressly

3    preempted plaintiff's fraud by omission claim related to alleged inadequate disclosures to doctors

4    and patients); *Frere,* 2016 WL 1533524, at *10.

5         Accordingly, plaintiff's fraud claims are preempted by the MDA and FDCA with the

6    exception of plaintiff's fraudulent misrepresentation claim based upon defendants' marketing

7    materials and training materials that were distributed to physicians and patients.  In addition,

8    because plaintiff's sixth cause of action is based solely on her fraud claim (Doc. Nos. 21 at ¶ 136;

9    23-1 at 11), that UCL claim is similarly preempted by the MDA and FDCA except to extent it is

10   based on defendants' alleged misrepresentations to physicians and patients in their marketing and

11   training materials.

12   **B.      Sufficiency of Plaintiff's Allegations in Support of Her Claims**

13        In their pending motion to dismiss plaintiff's FAC, defendants also argue that plaintiff has

14   not satisfied federal pleading standards with respect to her claims for failure to warn (first,

15   second, and fourth causes of action), fraud (fifth cause of action), and UCL (sixth cause of

16   action).  Below, the court analyzes each argument in turn.

17        1.      Failure to Warn Claims

18        FDA regulations require that medical device manufacturers must report to the FDA "no

19   later than 30 calendar days after the day that you receive or otherwise become aware of

20   information, from any source, that reasonably suggests that a device . . . [m]ay have caused or

21   contributed to a death or serious injury[.]"  21 C.F.R. § 803.50(a).  To survive a motion to

22   dismiss, a state law negligence or strict liability failure to warn claim that is parallel to federal

23   regulations "must include allegations of actual adverse events that [d]efendants did not report"

24   and factual content that supports a causal nexus between the defendant's failure to report and the

25   injuries allegedly suffered.  *Grant v. Corin Group PLC*, No. 3:15-cv-00169-CAB-BLM, 2016

26   WL 4447523, at *7 (S.D. Cal. Jan. 15, 2016); *see also Houston*, 957 F. Supp. 2d at 1174.  A

27   general allegation that defendant failed to report adverse events to the FDA is not sufficient to

28   demonstrate causation.  *Hawkins*, 2014 WL 346622 at *8.  In *Eidson v. Medtronic, Inc.*, 40 F.

Supp. 3d 1202, 1234 (N.D. Cal. 2014), the district court denied the defendant's motion to dismiss after the plaintiff amended the complaint to add specific facts as to the nature of the failure to report, which included a study that defendants under-reported adverse events on a large scale and allegations that plaintiff's surgeon would have had access to the reports of adverse events if it had been reported properly.  *See also Michajlun v. Bausch & Lomb, Inc.*, No. 3:14-cv-01365-JM-JMA, 2015 WL 1119733, at *8 (S.D. Cal. Mar. 11, 2015) (complaint alleged the existence of articles discussing specific instances of the claimed adverse events that had not been reported); *Simmons*, 2013 WL 1207421, at *5 (mere allegation that defendants failed to report adverse events related to electric shocks to persons implanted with the medical device failed to state a claim).

Here, in their pending motion to dismiss, defendants argue that plaintiff failed to "explain *how* the subject warning was inadequate" and that plaintiff's failure to warn claims are barred by the learned-intermediary doctrine, which provides that a medical device manufacturer "satisfies its duty to warn when it provides adequate warnings to the prescribing physician, as opposed to the patient." (Doc. No. 23-1 at 21) (citing *Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 706 (E.D. Cal. 2019); *see also Brown v. Superior Court*, 44 Cal. 3d 1049, 1061–62 n.9 (1988)).  However, here, the  allegations of plaintiff's FAC can fairly be read to state that defendants failed to provide any warnings at all, to the FDA, the clinicians, and patients, including plaintiff.  (*See* Doc. No. 21 at ¶¶ 96–97, 102–03.)  Defendants' argument that the learned intermediary doctrine requires dismissal of plaintiffs' failure to warn claim is unavailing, except to the extent the claim is based on a claimed duty of defendants to warn plaintiff directly, which, as discussed above, is already preempted by the MDA.

Further, plaintiff specifically alleged in her FAC that defendants were aware of potential adverse events relating to the Ulthera System causing serious injury at least twice—when defendants were sued in 2017 and 2018 in actions alleging "serious and permanent facial injuries" caused by the Ulthera System, including "serious facial nerve damage, scarring, discoloration, and elasticity injuries"—and yet failed to report those adverse events to the FDA.  (Doc. No. 21 at ¶¶ 55–56.)  Defendants argue that because one of those lawsuits (*Zhu v. Ulthera, Inc.*, No. 2:17-

1  cv-09057 (C.D. Cal. 2017)) was settled, that lawsuit cannot trigger defendants' need to report to

2  the FDA.  (Doc. No. 23-1 at 12 n.3.)  However, FDA regulations require medical device

3  manufacturers to report to the FDA within 30 days of becoming aware "from any source" of

4  information "that reasonably suggests" their devices "*may* have caused or contributed to . . .

5  serious injury[.]"  21 C.F.R. § 803.50(a)(1) (emphasis added).  The complaints initiating the

6  lawsuits in 2017 and 2018, once served upon defendants, constituted sources of information that

7  suggested the Ulthera System *may* have contributed to serious injury, regardless of the outcome

8  of those lawsuits.  According to the plain language of 21 C.F.R. § 803.50(a)(1), the fact that one

9  of the actions was settled does not act so as to relieve defendants of the obligation to report the

10  possible adverse events to the FDA within thirty days of becoming aware of the Ulthera System's

11  possible cause or contribution to serious injury.

12      Because plaintiff here, like the plaintiff in *Eidson*, alleged specific instances of adverse

13  effects that were not reported to the FDA and alleged that her clinicians would have had access to

14  reports of adverse events such that plaintiff would have been informed of the risks of the Ulthera

15  System and chosen not to use it, plaintiff has sufficiently pleaded a failure to warn claim to the

16  extent the claim is based on an asserted failure to report adverse events to the FDA.  *See Houston*,

17  957 F. Supp. 2d at 1174 (a parallel state claim for failure to warn must allege the defendant failed

18  to report adverse events and that the failure to warn caused the plaintiff's injuries); *Eidson*, 40 F

19  Supp. 3d at 1234 (denying a motion to dismiss because the complaint alleged specific facts as to

20  the nature of the failure to report and asserted that plaintiff's surgeon would have had access to

21  the reports of adverse events if they had been properly reported).

22      2.      Fraud Claim (Fifth Cause of Action)

23      To survive a motion to dismiss, plaintiff's fifth cause of action for fraud and sixth cause of

24  action for violation of the UCL (based solely on plaintiff's fraud claim) must meet the pleading

25  requirements of Federal Rule of Civil Procedure 9(b).  *Neilson v. Union Bank of Cal., N.A.*, 290

26  F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both

27  claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity

28  requirements."); *Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s

1    heightened pleading standards apply to claims for violations of the . . . UCL.").

2           Plaintiff's fraudulent misrepresentation claim alleges that defendants knowingly made

3    misrepresentations regarding the safety and efficacy of the Ulthera System "in marketing

4    materials, including patient brochures, videos, online advertisements, and online at

5    www.ultherapy.com" that reached patients and clinicians using the Ulthera System.  (Doc. No. 21

6    at ¶¶ 120, 122.)  In support of her fraud claim, plaintiff attaches as exhibits to the FAC various

7    marketing materials issued by defendants to clinicians, which include the dates of their issuance.

8    (Doc. Nos. 21-2, 21-3, 21-7, 21-8, 21-9, 21-10.)  The misrepresentations alleged by plaintiff

9    include that no permanent injuries to facial nerves have been reported to be associated with

10   Ultherapy, and that Ultherapy was safe for use on one's entire face, including on the cheeks and

11   near the eyes, despite defendants' knowledge that the system cannot be safely used near the eyes.

12   (*Id.* at ¶¶ 24–26, 35, 44.)  The FAC also alleges that defendants made these misrepresentations

13   with the intent to induce patients and clinicians to rely upon the statements and use the Ulthera

14   System despite the risks associated with the use of the device.  (*Id.* at ¶ 121.)  Plaintiff alleges that

15   she and her clinicians "did not have an equal opportunity to become apprised of the falsity of

16   [d]efendants' representations" and relied on the truth of the representations when choosing to use

17   the Ulthera System.  (*Id.* at ¶¶ 123, 126, 129–30.)

18          Although plaintiff does not allege in the FAC who specifically made the claimed

19   misrepresentations by creating the marketing materials, plaintiff is not required to plead the

20   authors' identities when such facts "lie more in the knowledge of the opposite party" and plaintiff

21   has provided notice by clearly identifying the user manual and specific marketing materials in the

22   FAC's exhibits.  *See Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991)

23   (holding that the requirement of specificity is relaxed when the allegations indicate that the

24   defendant must necessarily possess full information concerning the facts of the controversy" or

25   "when the facts lie more in the knowledge of the opposite party"); *Westlye v. Look Sports, Inc.*,

26   17 Cal.App.4th 1715, 1751 n. 25 (1993) (holding that the Rule 9(b) specificity requirement is

27   relaxed "[s]ince this cause of action is based on advertisements and a published technical manual

28   distributed to dealers, those pleading requirements do not apply.").

Because here plaintiff has alleged facts describing the "what, when, where, and how of the misconduct charged," and the fact as to "who . . . of how the misconduct charged" lies in the knowledge of defendants, the court concludes that plaintiff's fraud and UCL claims are sufficient to meet the minimum federal pleading standards. *Vess*, 317 F.3d at 1106; *Tarmann*, 2 Cal. App. 4th at 158.

### 3.   UCL Claim (Sixth Cause of Action)

Defendants also argue that plaintiff lacks standing to seek relief under the UCL because she does not seek injunctive relief and cannot receive restitution. Defendants' argument on this point is well taken. "A private litigant may plead a cause of action under the [UCL] only for injunctive or restitutionary relief." *Pena v. McArthur*, 889 F. Supp. 403, 407 (E.D. Cal. 1994) (citing *Indus. Indem. Co. v. Superior Court*, 209 Cal. App. 3d 1093, 1096 (1989)). Private litigants like plaintiff cannot pursue damages under the UCL. *Indus. Indem.*, 209 Cal. App. 3d at 1096. Plaintiff argues in her opposition brief that she has standing because she seeks "restitution because she paid for the Ultherapy." (Doc. No. 28 at 30.) However, plaintiff's FAC seeks relief for her claims in the form of damages, attorneys' fees, costs of suit, prejudgment interest, and "such other relief as the Court may deem just and proper." (Doc. No. 21 at 19.) What is conspicuously absent from the FAC is a request for either injunctive or restitutionary relief, or even an allegation that plaintiff "lacks an adequate legal remedy." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Furthermore, as defendants point out, plaintiff paid Body Del Sol for her Ulthera System treatment, she did not pay defendants. (Doc. No. 33 at 17.) Restitution under the UCL requires that defendants "return something [they] wrongfully received." *Inline, Inc. v. Apace Moving Sys., Inc.*, 125 Cal. App. 4th 895, 903 (2005). "A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011). Because defendants in this case did not receive the money that plaintiff paid Body Del Sol for her treatment with the Ulthera System, restitution is unavailable to plaintiff. Furthermore, even if plaintiff had paid money to defendants related to her Ultherapy treatment, plaintiff "must

1    establish that she lacks an adequate remedy at law before securing equitable restitution for past

2    harm under the UCL[.]"  *Sonner*, 971 F.3d at 844 (internal citations omitted).  Plaintiff does seek

3    a "sum in equitable restitution as 'a full refund of the purchase price'" that appears to be merged

4    in her request for damages to compensate her for the past harm alleged.  (Doc. No. 21 at 19.)

5    However, plaintiff "fails to explain how the same amount of money for the exact same harm is

6    inadequate or incomplete, and nothing in the record supports that conclusion."  *Sonner*, 971 F.3d

7    at 844.

8           Because plaintiff does not seek injunctive relief, fails to establish that she lacks an

9    adequate remedy at law, and cannot receive restitution from the named defendants, plaintiff's

10   UCL claim will be dismissed at this time for lack of standing.

11   **C.     Leave to Amend**

12          In her opposition brief, plaintiff requests leave to amend the FAC to cure any deficiencies

13   the court identifies in granting defendants' motion to dismiss.  (Doc. No. 28 at 31.)  Plaintiff

14   concedes that dismissal of defendant Merz Inc. due to lack of personal jurisdiction, as well as her

15   strict products liability claim based on manufacturing and design defects (first cause of action),

16   and her express warranty claim (third cause of action) is appropriate, and does not see leave to

17   amend these claims.  (*Id.*)

18          The court has carefully considered whether plaintiff is capable of further amending the

19   FAC to state cognizable claims for relief.  A district court should provide leave to amend upon

20   granting a motion to dismiss unless it is clear that the complaint could not be saved by any

21   amendment.  *See Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2012) (citing *Manzarek v. St.*

22   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).  "Valid reasons for denying

23   leave to amend include undue delay, bad faith, prejudice, and futility."  *California Architectural*

24   *Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987); *see also Chinatown*

25   *Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (leave to amend is properly

26   denied if the proposed amendment lacks merit or would be futile in saving plaintiff's suit);

27   *Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983)

28   /////

1   (holding that while leave to amend shall be freely given, the court does not have to allow futile

2   amendments).

3        Applying these standards, the court concludes that here it may be possible for plaintiff to

4   re-allege certain, but not all of her, claims to avoid preemption and address the pleading

5   deficiencies noted above.  Plaintiff's first, second and fourth causes of action are preempted by

6   the MDA to the extent that they allege defendants failed to warn physicians and patients directly

7   of any adverse events related to the use of the Ulthera System.  Because any such failure to warn

8   claim would continue to run afoul of the MDA's express preemption provision, leave to amend

9   would be futile as to those claims.  As such, plaintiff will not be granted further leave to amend

10  her first, second and fourth causes of action.  Plaintiff's fifth cause of action alleging fraudulent

11  misrepresentation and concealment is partially preempted by the MDA.  However, it appears that

12  plaintiff may be able to able to fit into the "narrow gap" of preemption with additional factual

13  allegations as to the specific misrepresentations and concealment.  As such, plaintiff will be

14  granted further leave to amend with respect her fifth cause of action.  For the same reason, since

15  plaintiff's UCL claim is based on her fraud claim, and because plaintiff may yet be able to seek

16  equitable relief, plaintiff will also be granted further leave to amend her sixth cause of action.

17  Accordingly, the court will grant plaintiff leave to file a second amended complaint to address,

18  where possible, the deficiencies noted in this order if she can do so supported by allegations

19  advanced in good faith.  *See Frere*, 2016 WL 1533524, at *7; *Houston,* 957 F. Supp. 2d at 1181

20  n.12 (granting motion to dismiss with leave to amend after finding that certain claims were

21  preempted by federal law).

## CONCLUSION

23       For the reasons set forth above, defendants' motion to dismiss (Doc. No. 23) is granted in

24  part and denied in part as follows:

25       1.     Defendants' motion to dismiss is denied as to the following causes of action,

26              which are not preempted by the MDA and are sufficiently alleged to state a claim:

27              a.     Plaintiff's first, second, fourth causes of action as to a failure to warn based

28                     only upon defendants' alleged failure to report adverse events to the FDA;

and

    b.    Plaintiff's fifth cause of action as to fraud based only on defendants' alleged misrepresentations to patients and clinicians contained in marketing materials.

2.    Defendant Merz Inc. is dismissed from this action due to lack of personal jurisdiction;

3.    Plaintiff's first cause of action for strict products liability based on an alleged manufacturing defect and an alleged design defect is dismissed without leave to amend;

4.    Plaintiff's first cause of action for strict liability based upon defendants' alleged failure to warn clinicians and patients is expressly preempted by the MDA, and is dismissed without leave to amend;

5.    Plaintiff's second cause of action for negligence based upon defendants' alleged failure to warn clinicians and patients is expressly preempted by the MDA, and is dismissed without leave to amend;

6.    Plaintiff's third cause of action alleging breach of express warranty is dismissed without leave to amend;

7.    Plaintiff's fifth cause of action for fraud based on alleged concealment is preempted by the MDA, and is dismissed with leave to amend;

8.    Plaintiff's fifth cause of action for fraud based on alleged misrepresentations to the FDA is preempted by the MDA, and is dismissed with leave to amend;

9.    Plaintiff's sixth cause of action for violation of the UCL is impliedly preempted by the MDA, and fails to state a claim due to plaintiff's lack of standing, and is dismissed with leave to amend;

10.    Plaintiff is directed to either:  (1) file a second amended complaint within twenty-one days of the date of this order, or (2) file a notice that she intends to proceed only on the following remaining claims:

/////

a.   Plaintiff's failure to warn claims (first, second, fourth causes of action) based only upon defendants' alleged failure to report adverse events to the FDA; and

b.   Plaintiff's fraud claim (fifth cause of action) based only on defendants' alleged misrepresentations to patients and clinicians in their marketing materials.

11.   The Clerk of the Court is directed to terminate Merz Inc. as a defendant on the docket of this case.

IT IS SO ORDERED.

Dated:   **February 17, 2022**

_____
UNITED STATES DISTRICT JUDGE

24